We're happy to hear argument in United States v. Edelens, No. 12-4239, etc. Good morning, Your Honors. Gerald Ruder, I'm happy to appellant Kendall Taylor. If I could, Your Honors, I'd like to consider an argument this morning, Issue 2, which is found at pages 29-49 in the appellant's brief without waiving any of the other issues that are relevant to the appellant Taylor. I believe that co-counsel will be addressing other issues later on. Your Honors, in terms of this particular argument, we start with the proposition that the Sixth Amendment does guarantee the right to counsel under Gideon. We further follow the given that the Sixth Amendment guarantees the effective assistance of counsel vis-à-vis Strickland. And I think further we can agree that retained counsel has a preference in terms of a defendant, if he can afford to pay a lawyer under Wheat v. U.S., then there should be a preference that he should keep that lawyer. But that right is not an absolute right. And in this particular case, our position is that the counsel for Mr. Taylor had a deficient performance by reason of the conflict that he had by the dual representation of two individuals at the time this case was heard, pre-trial, during trial, and at sentencing. We want this court to find that there was an actual conflict of appellant's trial counsel. And we believe that the definition of actual conflict is found in this court's decision, Gilbert v. Moore. It can be proven essentially in two ways, if I understand it. And that is, first, if there is a divergence in terms of any material fact or material legal issue between the two. Mr. Taylor wanted this lawyer, is that right? Your Honor, Mr. Taylor was inquired by the trial court on November the 1st at a motions hearing, which evidently was to be a so-called waiver hearing, which we believe is highly inadequate to have determined whether or not Mr. Taylor knowingly waived his right to conflict-free counsel. So we find, though, that we believe an actual conflict existed because of the course of action taken by the trial counsel in his representation of Mr. Taylor. Your Honor, on October the 26th, just about five days before trial started, the government wrote a letter to all counsel pointing out that there was a potential conflict in that case, in the joint appendix. And on November the 1st, the issue was taken up by the trial court. I know Your Honors have read the joint appendix, and it seems as if Mr. Reynolds, the lawyer for Mr. Taylor, wasn't even sure about who the conflict concerned. And yet it's obvious he knew who the conflict concerned, one, Mr. Cole. Mr. Cole was the man who was awaiting trial in the Eastern District of Virginia, a federal case. But he also was awaiting trial in the Prince George's County Circuit Court for armed robbery in about the same area where this particular event happened to take place. The reason we believe that Mr. Reynolds' conduct in representing Mr. Taylor was deficient is for several reasons. Number one, he represented them simultaneously rather than consecutively, which I think in itself becomes an issue. Number two, he knew that the text message which was sent by Mr. Cole during the course of the robbery itself was going to be introduced as evidence, and he realized that the government's version was that Mr. Cole was a co-conspirator. Now, there's a separate issue in the brief. I'm not going to address that, whether he was a co-conspirator or not. But certainly the district court believed he was a co-conspirator, and she said so. In fact, at the sentencing hearing, I'm struck by the fact that the trial court indicated how this person, who we know as Mr. Cole, was as culpable as all the three appellants that are now here before this tribunal, and even she suggested that this man, Mr. Cole, would have known that firearms were used and he would be seeking the same kind of punishment had he been a member of this particular trial. The trial counsel knew that a thorough investigation of the defense theory, which was this was not a kidnapping. It was a burglary, or it was a grab money and drugs and leave. It was not meant to be a kidnapping. That was the defense offered by trial counsel in his opening statement. He knew that if a thorough investigation had been done, it would have required him to discuss with Taylor the text message, his relationship, if any, with Mr. Cole, his relationship, if any, with anybody else involved in the case and its implications. He, of course, on this record, we know did not do that. A thorough investigation would have required this lawyer to have interviewed Cole. Mr. I may ask you this. Do you run the risk on this record? And I'm not second guessing you at all. I would never do that. But do you run the risk that by presenting an ineffective assistance, conflict based claim on direct appeal, that you foreclose a more promising opportunity in a post conviction? Your Honor, I think the answer is no, because what I think this court should consider doing is remanding this matter for a full evidentiary hearing, because the record probably is incomplete. But what if you lose now? Then you're right to pretty much foreclosed your habeas claim, haven't you? I don't think so, Your Honor, because the record is so incomplete. Part of the difficulty is that I think the trial court had an obligation to inquire fully as to the nature of the conflict. But that's my point. You just said the record is incomplete. And so I guess your implied response to Judge Motz is if we lose, Judge, what we want to lose on is your refusal to consider the claim. Is that what you're suggesting? Narrowly, yes, Your Honor. That if we're going to rule in your favor, we should consider the claim. But if we're not going to rule in your favor, we should defer the claim to 2255. And, Your Honor, I could see the distinct possibility of the court doing just that. What about the distinct possibility of the court deciding it on the merits that you put in front of us and rejecting the argument? Your Honor, if the court did that, I admit it may very well narrow the 2255 claim. That would be for certain. Your Honor, I would argue further, if I could, that in this particular case, if the court was to examine the Mickens v. Taylor case, which is relevant to this matter, we believe that the court would find in this case that there was an actual conflict. The court would also find that the actions of trial counsel were deficient, and the court, I think, would also find that his failure to pursue a strategy different than he did was, in fact, linked to the actual conflict which he had. I think with that, my time appears to be up. Thank you very much. Thank you very much, Your Honor. Ms. Johnson? Thank you. Good morning. May it please the Court, my name is Julie Johnson, and I'm here today on behalf of Appellant Darrell Carter. And with my time today, I would like to focus on the enhancement of the sentences of Mr. Taylor and Mr. Carter for obstruction of justice. There were three defendants in this case. All three were convicted of the same conspiracy to kidnap. All three defendants were told by the court that they would have the assistance of their counsel at the pre-sentence interviews. And yet two of those defendants, Mr. Carter and Mr. Taylor, had attorneys who chose not to attend and received no advice ahead of time about how to conduct themselves during those very important interviews. And what happened with those interviews with those two defendants is when the probation officers asked them about the offense conduct, they repeated the trial strategies that their attorneys had been advancing throughout trial, and in doing so, denied their guilt. Now, these two defendants had sat through trial and heard their attorneys over and over again advance the defense theory, which was essentially they weren't there to kidnap the victim, they were there to rob her, and that they did not have guns at the time of the offense. They heard the attorneys advance those arguments in pretrial motions, in opening statement. They heard them rigorously try to advance that theory through cross-examination of most of the government witnesses. They heard them continue that theory in the closing statement, and also in a motion for judgment of acquittal. They heard their attorneys making these arguments over and over again. Well, you know, I think that I credit you for coming up with this argument, and it might be persuasive if they were conspirators somewhere else, but they knew the facts of the case, no matter how many times their lawyers said what the facts were, and they knew, did they not, that this interview was to assess their sentence, to recommend they knew the trial was over, they knew guilt had been imposed, so it seems to me they knew a lot without their lawyers there. You're not making an ineffective assistance claim? No, Your Honor. I do note that there are some courts, including the Washington case from the Tenth Circuit, that have found ineffective assistance based on a failure, an attorney's failure to adequately advise on the pre-sentence interview. We're not advancing that claim today. That's for another day. Of course, Maryland is doing some similar pre-trial. But even if we can understand, the court did advise them that this was an important document, and she would rely on it heavily at sentencing, but the larger point is how these defendants were supposed to understand and understand that once they entered that interview that the rules had suddenly changed, that the words, that the arguments, that the theories, that they had heard their attorneys advancing on their behalf, which had been accepted at trial, I mean the jury had not completely accepted it, although there was a split verdict, that all of a sudden when those same theories come out of their mouth in the interview, that that's going to subject them to an enhanced sentence. But that assumes that you can lie at trial. Your Honor, we don't concede that the statements are a lie. Well, then, if they weren't a lie and they were the truth, then the district court didn't believe them. Then it doesn't make any difference what they said. In other words, you're saying your argument necessarily is suggesting to us that they should have lied when they were talking to the probation officer to get a lighter sentence because what their defense was was correct. That can't be your argument. No, Your Honor. The argument is, and here we have the benefit of looking at what happened with the third defendant, Mr. Edlin, whose attorney did do the right thing in this case and attended his client's pre-sentence interview. And when he was asked about the offense conduct, it says right in his pre-sentence report, upon advice of counsel, he made no statement regarding the offense, which is exactly what a defendant should do when they have not waived their Fifth Amendment rights. And especially in a case such as this, in which the government had not yet dismissed that firearm charge, which the jury had not been able to reach a unanimous verdict on, any admission that Mr. Carter and Mr. Taylor made during that interview, it could have been used against them in a subsequent trial on the 924C charge. So there was very real danger in this interview, and my point is not that the defendant should have said X or Y, but they should have had assistance. There was no way for them to go to the loose. And yet you say you're not asserting ineffective assistance of counsel claim. I'm a little confused by that. Because, Your Honor, we're not here today to address the errors of counsel. I do think that will be the subject of a later proceeding. And yet that's what you rest your argument on. No. If I understand it, maybe I don't. I'm sorry, Your Honor. What we're here today is to talk about the error of the court, and specifically our position is that it was procedural error for the district court to enhance the sentence of Mr. Carter and Mr. Taylor based on what were essentially uncounseled denials of guilt. You're arguing the district court has an obligation to go find out whether they had counsel at this hearing? No, Your Honor. It was very clear at the sentencings of both Mr. Carter and Mr. Taylor. That's not the district court's job. The district court's job is to take the evidence presented to the district court and determine what a correct sentence is. Understood, Your Honor. But in this case, the record was clear. Actually, the first question that the court asked of the probation officer at Mr. Taylor's sentencing was who was present at the pre-sentence interview. And it was rigorously argued by Mr. Carter's attorney at his sentencing that he did not have counsel. He was just repeating what his trial attorney said. We're not expecting, when I'm trying to impose a standard on the court to do that investigation, but here it was abundantly clear and it was rigorously contested. And, you know, sometimes we have to wonder what impact does this have on a sentence. Here it's very clear that the court's finding of obstruction had a significant impact on the sentence, specifically five years. That's very clear from the transcripts from the sentencing from all three defendants. Mr. Edelin, who did not make a statement at his pre-sentence interview, received a sentence of 30 years. Mr. Carter and Mr. Taylor received a sentence of 35 years. And the court, in both of their sentences, specifically referred to the obstruction of justice enhancement as being a primary reason for the different sentences. So it clearly had an impact on the sentences here. And our point is we're not asking the court to micromanage what the probation office does. We're not asking this court to instruct district courts to inquire in every case. But in a case such as this, which has very unique circumstances, when defendants have not waived their Fifth Amendment rights, they have the possibility of a charge hanging over their heads. And when the court knows that they did not have the benefit of counsel, it is simply erroneous to use those uncounseled denials of guilt against them. Why do you say they didn't waive their Fifth Amendment rights? Because they had proceeded to trial. There had been no waiver. No, I'm talking about at the pre-sentence investigation interview. Didn't they waive their rights at that interview? Well, it's true that any statements that they made at that interview could be used against them. So there was a waiver. Well, I wouldn't say it was a waiver, no, Your Honor. They hadn't been advised of their Fifth Amendment rights. But you don't have to be advised. I mean, you don't get advice of rights. You don't get a Miranda warning when you go into the grand jury. No. That's a matter of constitutional requirement. Well, I think in the grand jury you do. In a routine pre-sentence interview, it's true that you do not. But I think what's important to focus on is the court's reliance on those statements, given the unique circumstances in which those statements was made, was unfair. These defendants had no way of knowing that the statements that they made were going to be used against them. And we shouldn't be using a gotcha to enhance defense. But what rule of law requires that they be advised that their statements will be used against them in a pre-sentence investigation report interview? I see my time is up. May I answer the question? Go ahead. Thank you. Your Honor, there are courts, including this court, who have found that Miranda warnings are not required in a routine pre-sentence interview. This court does not need to address that issue to resolve the issue that's on the enhancement. Our point is merely that given the facts here, the court should not have used those statements to enhance the sentences of Mr. Carter and Mr. Taylor. Thank you very much. Now we'll hear from the government. Thank you. Good morning. May it please the Court. My name is Jerome Miatico, here on behalf of the government. Your Honors, I appreciate some of the questions you asked of opposing counsel with regard to two of these issues, the obstruction enhancement that they raised and also the alleged attorney conflict. And I plan to address each of those issues in turn and possibly some other issues if you have questions. But first, Your Honors, if I could just begin with a brief factual statement, and I'll get right to the legal issues in this case. This case is at its core about three defendants, three violent repeat offenders who were caught red-handed inside of a bank manager's home. The bank manager, her then 12-year-old son, both testified at trial. I think really you can assume we know the facts, the dreadful facts of this case. Absolutely, Your Honor. It's within the context of this particularly violent, particularly vicious attack that we have this waiver of an alleged attorney conflict. Now the opposing counsel didn't get into really the waiver in this case, but I would just point the court to their decision in U.S. v. Brown, which tells us if a defendant waives the conflict with knowledge of the crux of the conflict and an understanding of its implications, the waiver is valid, even if the defendant does not know each detail regarding the conflict. Are there some conflicts you cannot waive? Your Honor, the conflict in this case was certainly waivable. That wasn't the question I asked you, was it? It was not. So there are some conflicts you cannot waive? I think what matters is the specific facts and circumstances of each case. Look, I don't want to be unpleasant, but is your answer yes, there are some conflicts that you cannot raise, but no, this is not one of them? Or is it no, there are no conflicts that you can ever, all conflicts can be waived? Respectfully, Your Honor, I think that it's not a yes or no answer. I think you have to look to each of the specific facts of every case before you make that determination. But then that suggests there are some conflicts which you cannot waive if you have to look at the facts of each case. Well, I'll give you an example, Your Honor. This is not a gotcha question. This is like, I don't know if you court these things, but you must have thought of this question, and it's not a trick question. Are there some conflicts you can't raise? I believe that there are some conflicts that you cannot waive, Your Honor. Good job. Yes. But specifically in this case. WEED v. United States stands for the proposition that district courts are given substantial latitude in deciding the facts of each case and determining if a waiver is valid and whether to disqualify counsel. And that needs to be done. The district courts need to be given substantial latitude so they don't face the uncertainty of reversal in every case with a potential conflict. Certainly defendants could claim they were denied the right to counsel if there's a disqualification, and defendants could claim that there's an effective assistance if their attorney is not. In this case, Defendant Taylor was made aware of the nature of the conflict. He was made aware of the implications in an inquiry by the court. And I submit to this court that it was a textbook example of an inquiry on the record in the district court. And I would just point the court to the Joint Appendix 71 to 74 for that. The district court specifically advised Defendant Taylor of his attorney's representation of Cole, the nature of this potential conflict, that this was an unindicted co-conspirator whose name would come up at trial. Earlier, this individual was, in fact, named in Joint Appendix 66, that his name was William Cole. And the district court told Defendant Taylor that his attorney's representation of Cole could affect questions that were asked of witnesses at trial, could affect his attorney's advice on whether to plead guilty or to go to trial. And Taylor affirmed that he understood these implications, he understood the nature of the conflict, and that he, quote, I'm giving up that right. She actually said, I'll appoint a lawyer to meet with you to discuss whether you should keep your lawyer. That's exactly right, and he declined. He declined independent advice. And it even goes beyond that, Your Honor. There was a letter that was filed by the government that talked about the nature of the conflict and its implications that was filed on the docket. And we had a proffer from the government on the record with Taylor present that went into the nature of the conflict and its implications. Did you consider moving for disqualification? You didn't, did you? No. I mean, the government did not. No, what the government did with a letter to the court and then raising it prior to the motions hearing was I mean, sometimes the government does, in fact, challenge a waiver by a defendant. And, Your Honor, the reason that we didn't do that in this case is because we saw this as a potential conflict. This was not an actual conflict that adversely affected his lawyer's performance. And it makes a lot of sense why it was not an actual conflict. You know, when we look at the facts of this case, we have on the record that Can I move you to the second argument that was in front of us? Because I think you've pretty thoroughly discussed this one. Absolutely, Your Honor. And that is the difference in the sentences. Is it accurate that the only reason that one of the defendants got a lighter sentence was because he had not sort of repeated the his story, the trial story with the probation officer? Well, I think that the, no, I think that the district court was clear in evaluating the 3553A factors and taking everything into consideration in coming up with that sentence. I don't think there's a statement by Yes. He did not get an obstruction enhancement and the other two did. Is that correct? That is correct, Your Honor. It sounds like the basis of the obstruction enhancement is the discussion with the probation officer, right? I'm sorry, could you repeat that? Is there any other basis for the obstruction enhancement than these remarks that were made to the probation officer? No, Your Honor. So it sounds like that that was a basis for the difference in the sentences. It was certainly one factor, Your Honor. What was the other factor? If he didn't get the obstruction enhancement, didn't that make the difference in the sentences? Well, if you look at the guidelines in this case, Your Honor, there were two defendants that were career offenders facing 360 to life under the guidelines. And then there was one defendant, Taylor, who was one of the defendants who was hit with the obstruction enhancement, who did not have that. It was a slightly lower guideline range. So the guideline ranges were different for each of these defendants. And that's something that certainly the court took into account when making this decision. Okay, what were the sentences imposed on the three defendants? There was 360 months for defendant Edelin. Uh-huh. And then 420 months for the other two defendants, Carter and Taylor. Okay. And Edelin did not make his lawyer told him not to say anything? That is correct, Your Honor. And so he got appreciably less, a lesser sentence. And what is the basis for it other than this enhancement? Well, Your Honor, I think other than. What is the basis for distinguishing between them other than the enhancement? Right. Well, I think the roles in the offense, not the roles in the offense as discussed by the guidelines, but as taken into account in the 3553A factors. Throughout the trial, it was suggested that Edelin played a smaller role in the actual home invasion and the kidnapping than the other two defendants. That is something that was certainly raised by defendant Edelin's counsel at sentencing. It was something that was discussed thoroughly about how he was not the primary aggressor in the kidnapping. And I think that certainly is something that the court would have taken into account in sentencing him to a lower sentence. Your Honor, but if I may, there's really three arguments in this obstruction enhancement that the opposing counsel raised. And one, it's under the guidelines. Two, it's under the Fifth Amendment. And then three, it's under the Sixth Amendment. Each of these arguments should fail. Under the guidelines, the guidelines do allow for an exception. Can you start in the reverse order, perhaps? What is the Sixth Amendment argument, as you understand it? Well, as I understand it, their Sixth Amendment argument is that they do have a right to counsel. And yet they say they're not asserting an ineffective assistance claim. That's correct. So what's left of the Sixth Amendment claim if there's no ineffective claim? Well, as I understand it, and I think that in oral argument it was probably clarified a bit, but as I understand it from the brief, the Sixth Amendment argument is that it should be a critical stage of the proceeding, that a pre-sentence interview, a defendant should have a right to counsel. As opposed to ineffective assistance of counsel. And as I said, that's how I understand the argument. I think the way it was presented was a bit different in the oral argument. Okay, so you want to talk about Fifth Amendment and guidelines. Right. So there is no right to counsel at a routine pre-sentence interview. I think the Court has made this clear. I think your colleague conceded that. I'm sorry? I think your colleague conceded that in her argument. So why argue that? Was this a routine pre-sentence interview, though, when there was a gun charge still pending against the defendants? And they were asked about that? Well, I think it is, and it's still a routine pre-sentence interview, Your Honor, because the probation officers are not agents of the prosecution. They're not facing prosecutorial forces at a routine pre-sentence interview. The prosecution is not asking the questions at this routine pre-sentence interview. What the probation officers are doing, they're neutral, fact-gathering agents of the court who are gathering information to help make the district court make an informed sentencing decision. That's no different whether there's a charge pending or not. They're still playing the same role at that time. When we talk about the guidelines themselves, the guidelines, as I said, do allow for an exception for a simple no. They allow for these laconic no's, affirmative statements denying guilt, and I think it's clear here that the defendants went way beyond any sort of mere denial of guilt. They fabricated a false story, both of them, telling the probation officer that they received a tip about money and drugs in the house, this was a burglary attempt or a robbery attempt, and that that's why they were there, not to take the bank manager back to her bank. That was the trial strategy for all defendants, was it not? Well, to say it was the trial strategy, I think, All right, the lie was perpetrated, let's say it the government's way, on behalf of all defendants at trial. Well, Defendant Edelin did not advance this in his opening or closing arguments. That was not a trial strategy for Defendant Edelin. Defendant Carter, Defendant Taylor, both of their attorneys raised that issue in their opening statement. What I can say, though, is there's not a shred of evidence that was admitted at trial to support this theory. So this was a theory that was brought up in opening statements, and then there was nothing presented to support that theory. And therefore, in closing arguments, they did not touch upon any of that evidence. But what if they had not made the statements they did before the pretrial officers, but had made the statements that Edelin made? Would the enhancement have been appropriate? No, it would not have. Not withstanding the opening argument. Right, it would not have, Your Honor. So I don't know that that's interesting, but I'm not sure how relevant it is, because we're talking about the enhancement, right? Correct. Yeah, Your Honor, it is clear that Defendant Carter, Defendant Taylor, advanced in the probation interview the same theory that their attorneys advanced. But the district court made it clear that they were not being hit with the obstruction enhancement merely because their attorneys advanced an argument. It's because they repeated those same statements, those same false stories to the probation officer. So it looks to me like a pretty clear violation of the Sixth Amendment, in terms of attorney performance. I don't think you would disagree with me that the standard of care in federal district court in criminal cases is to tell your client to say nothing beyond date of birth, address, and medical condition in a pre-sentence investigation report. I think everybody would agree to that. I respectfully disagree that this is ineffective assistance. Of course you would. Particularly when there is a charge pending. But the question is going to be, I think, how do you prove prejudice if the harm comes to you because you lied to a probation officer? In other words, if they had taken the stand and said what they said to the probation officer, there would be no issue, right? I mean, the district court could have reasonably applied our precedent and found a willful obstruction of justice if they had testified in the manner in which they answered. Absolutely. If the situation was that they also testified or testified instead of giving these statements to the probation officer, that would also be an obstruction enhancement, we believe. Of course, they would again assert ineffective assistance. I think that's true. I think the claim would be the same of ineffective assistance. But surely the district court would have obtained a knowing and involuntary waiver on the record in the courtroom before they took the stand and testified. And I'm certain that Judge Chasnow would have as well, given the fact that the waiver inquiry was so thorough. How much did it actually hurt them, this two-level bump-up, in practical terms? Right. So Defendant Taylor and Defendant Edelin had different guidelines. I'm sorry, Defendant Taylor and Defendant Carter had different guidelines. Defendant Carter was a career offender. Even without this enhancement, the guidelines would have been the same. The guidelines would have been the same. The guidelines would have been the same, 360 to life. Okay. And what about Taylor? Taylor, the guidelines would have been a two-level difference. A two-level difference equals about a five-year difference in the guidelines. But the guidelines in this case, the district court Judge Chasnow, she actually varied upward. Looking at the 3553A factors, she took into account the guidelines and imposed a sentence that was above the guidelines. So to say what would have been- Have you argued harmless here, harmlessness? I have not raised that in my brief, Your Honor. Did she make the finding that you sometimes find, which is even if my calculations are wrong, I would still sentence this way? She did not, Your Honor. Okay. But she did vary upward on Carter, even with the obstruction. Carter's guidelines were 360 to life. I'm sorry. She varied upward on Defendant Taylor. By how much? I don't know the answer to that. Okay. And when I say the sentence was 420 months, it was commensurate with Defendant Carter's sentence as well, which was also the 420 months. But she didn't vary upward on Carter because she didn't have to. That's correct. That was a guideline sentence. That was a guideline sentence. Yes, Your Honor. And without the obstruction, the guideline would have been the same, 360 to life. That's correct. But you don't remember what Taylor's guideline was. It was less than 360. I can certainly provide that information to you right now. I know it's in my brief as well. Well, no, no. I don't want you to take the time. Okay. Your Honor, unless there's other questions, for all those reasons, we would just ask this court to affirm the judgment and the convictions imposed by the district court below. Thanks. Thank you. Do we have any rebuttal? Judge Davis, I think in response to your question, I think it was five years difference. Sixty months was my recommendation. In the guidelines. In the guidelines. But she varied up. She did. I mean, it would have been. Your Honor, she did. She did. But what's remarked about that is that we all know that district judges are constrained by the guidelines. They look at them. They consider them. Well. Because this court says they're supposed to. They start there. I don't know that they're constrained. They start there. Having said that, Your Honor, doesn't it stand to reason that if my client's guidelines were two levels lower, that the judge would have considered that in her rebuttal?   No. No. No. No. No. No. No. No. No. No. No. No. No. No you don't. Because I think she did make her ultimate decision. The answer is yes, she will. Well, it looks to me like she went in 420. She was going for 420, wherever she started. Well she got there, Your Honor. But I think she got there. All I want to say was this in terms of the conflict issue, this court should find that there was an actual conflict. That conflict was not waivable. Or if it was waivable, it was not a proper waiver because it was not voluntary, it was not intelligent, and it was not knowingly made. Hence, this court does not have to reach the issue of whether or not there was ineffective assistance of counsel as we see the conflict. Thank you very much. Thank you very much, Your Honor. Ms. Johnson? Thank you. I just wanted to briefly address a few points. Regarding the reason for the disparity in the sentences among the defendants, I just wanted to provide a couple record citations that I think really illustrate that it was the obstruction of justice enhancement that was the driving force behind that five-year disparity. At Joint Appendix 1427, this is where the District Court rejected Counselor Edelin's counselor's argument that Mr. Edelin should be treated as less culpable because of his role in the offense. The court specifically rejected that and said, for various reasons, she found all three defendants to be equally culpable. She said the victims couldn't identify because the defendants had masks, she didn't know who did what, and even if he never actually had a gun in his hand, he was there, he fully participated, and he appeared to be the one who had contact with this purported co-conspirator. So the court said she found them equally culpable, and she repeated that statement in Defendant Carter's sentencing as well at Joint Appendix 1510. In Mr. Taylor's sentencing, the government urged a higher sentence for Mr. Taylor based in large part on the obstruction of justice enhancement. Mr. Edelin had been found to be a career offender. Mr. Taylor was only a criminal history Category 3. And the court cited in two different places at Joint Appendix 1482 and 83 and 1485 that she was finding the obstruction as well as the defense theory to be a large part of her sentence. And probably the best illustration is at Joint Appendix 1559 to 1560, where in Mr. Carter's sentencing, the court specifically referenced the fact that Mr. Carter, like Mr. Taylor, had obstructed justice and that warranted an additional sentence. Do you dispute the representation that the 360 to life would be the same for Carter without the obstruction? Your Honor, so we do have disagreement with some of the court's guideline calculations, but assuming that the court does not find fault with those, yes, it would have been 360 to life in any event. However, she clearly went up from the bottom of the guidelines, and if we compare the two most comparable sentences... Well, she went up from the top of the guidelines on Mr. Taylor. Well, she went above the guidelines for Mr. Taylor. That's right. And but for Mr. Edelman and Mr. Carter, who were both found to be career offender with the same guidelines, she only went up above the bottom of the guidelines for Mr. Carter. Thank you very much. Thank you. Mr. Ritter, we understand that your court appointed and we very much appreciate your efforts and do what our work without you. We will come down and greet the lawyers and then go to our next case.
judges: Diana Gribbon Motz, Andre M. Davis, Stephanie D. Thacker